# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RAYMOND FABER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00045 |
| | ) | |
| **MOUNTAIN STATES** | ) | Judge James P. Jones |
| **PHYSICIAN GROUP, INC., and** | ) | Magistrate Judge Pamela Meade |
| **BALLAD HEALTH** | ) | Sargent |
| | ) | |
| Defendants. | ) | ORAL ARGUMENT REQUESTED |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' UNDISPUTED FACTS

1. Dr. Faber was employed from 2017 until 2020 by the defendant Mountain States Physician Group, Inc. ("MSPG"), to practice medicine in the Mountain States Health Alliance ("MSHA") affiliated hospitals.

**Response:** Defendants object to this statement because it does not contain any citation to record as required by the Court. *See, e.g.*, *Diprete v. 950 Fairview St., LLC*, 2016 WL 6137000, at *2 (W.D. Va. Oct. 21, 2016) (Jones, J.). Admitted that Dr. Faber was employed by MSPG from 2017 until January 2020. Admitted that Dr. Faber was employed "to practice medicine in the Mountain States Health Alliance ("MSHA") affiliated hospitals," except to note that Dr. Faber's employment agreement specified that he would practice hospitalist medicine at his initial primary initial practice site or another site that had a contract with MSPG to provide

hospitalist physician services within 25 aerial miles of the primary initial practice site. Doc. 22-2 at 13.

2. In 2018, he signed a "Hospitalist Employment Agreement." ECF Doc. No. 22-2, Pageid# 439-456.

**Response:** Admitted that Dr. Faber signed a Hospitalist Employment Agreement on March 16, 2018, which shows that his employer is MSPG, except to state that the document speaks for itself and should be taken in its entirety.

3. Under the Agreement, Dr. Faber agreed to apply for and maintain the appropriate clinical privileges at the MSHA-affiliated hospitals, ECF Doc. No. 22-2, Pageid# 440, § 3.3, and to observe and comply with the medical staff bylaws of the MSHA-affiliated hospitals and with MSHA's policies and procedures, ECF Doc. No. 22-2, Pageid#: 573 Pageid# 441, § 3.10.

**Response:** Admitted that Section 3.3 of the Agreement required Dr. Faber to apply for and maintain membership and privileges at designated MSHA-affiliated hospitals, except to note that the Agreement required Dr. Faber to practice hospitalist medicine at his primary initial practice site or another site that had a contract with MSPG to provide hospitalist physician services within 25 aerial miles of the primary initial practice site. Doc. 22-2 at 13. Additionally, the document speaks for itself and should be taken in its entirety. The remainder is admitted.

4. Dr. Faber was assigned as his "primary initial practice site" to work in the Johnston Memorial Hospital ("JMH"), the MSHA-affiliated hospital in Abingdon, Virginia. ECF Doc. No. 22-2, Pageid# 440, § 3.6.

2

**Response:**  Denied as to the phrase "MSHA-affiliated hospitals"; the Hospitalist Employment Agreement required Dr. Faber to practice hospitalist medicine at his initial Primary initial practice site or another site that had a contract with MSPG to provide hospitalist physician services within 25 aerial miles of the primary initial practice site. Doc. 22-2 at 13. Additionally, the document speaks for itself and should be taken in its entirety. Admitted that Dr. Faber's primary initial practice site was Johnston Memorial Hospital in Abingdon, Virginia. *See id*.

5. The defendant Ballad Health ("Ballad") now manages JMH and other hospitals in Northeast Tennessee and Southwest Virginia. ECF No. 22-2, Pageid# 429-430, ¶ 4.

**Response:**  Denied.  Ballad Health manages operations at 21 hospitals in Northeast Tennessee and Southwest Virginia, one of which is JMH. Doc. 22-2 at 2-3.

6. MSPG is a subsidiary of Blue Ridge Medical Management Corporation ("BRMMC"), BRMMC is a subsidiary of MSHA, MSHA is a subsidiary of Ballad, and MSHA is the majority owner of JMH. ECF No. 22-2, Pageid# 460-461, Answers to Interrogatory Nos. 7 and 8.

**Response:**  Admitted that MSPG is a subsidiary of BRMMC.  Admitted that MSHA is a subsidiary of Ballad. Admitted that BRMMC a subsidiary of MSHA. Admitted that MSHA is the majority owner of JMH.

7. Ballad was created by the merger of MSHA and Wellmont Health Systems, which the Virginia State Health Commissioner approved by order dated October 30, 2017, pursuant to Va. Code § 15.2-5384.1.1

3

**Response:** Defendants object to this statement because it does not contain any citation to record as required by the Court. *See, e.g.*, *Diprete v. 950 Fairview St., LLC*, 2016 WL 6137000, at *2 (W.D. Va. Oct. 21, 2016) (Jones, J.). Though Defendants admit that the Virginia State Health Commissioner entered an order dated October 30, 2017 related to the merger, it is denied to the extent this implies that the Virginia State Health Commissioner was the only entity that made a finding in favor of the merger. Admitted to the extent that Ballad is a separate entity that was formed to facilitate an affiliation transaction between MSHA and Wellmont Health Systems.

8. On January 7, 2020, Dr. Faber wrote to members of his church about his employment, asking for support. In the email he wrote, "I have also been under heat for seeking to do appropriate admissions in a way that the community will trust our services, and I would not be committing fraud in my admissions." ECF Doc. No. 22-2, Pageid# 437-438.

**Response:** Denied as to the characterization that the email "ask[ed] for support"; rather, Dr. Faber asked for "prayers" and for the church members to "think of [him] and [his] family in prayer." *See* Doc. 22-2 at 9–11. Admitted that the quoted language appears in the email, but denied to the extent this quote is taken out of context; the document speaks for itself and should be taken in its entirety. *See id.*

9. The decision to terminate Dr. Faber immediately was made at a meeting on January 9, 2020, with the Deputy General Counsel for Ballad Health, the president of MSPG, and the chief executive officer of JMH, at which the January 7 email was discussed. ECF No. 22-2, Pageid# 431, ¶ 8.

4

**Response:** Admitted that Dr. Patterson made the decision to terminate Dr. Faber immediately in the course of a call with Robin Kindle, Deputy General Counsel for Ballad Health, and John Jeter, CEO of JMH. *See* Doc 22-2 at ¶ 8. Admitted that Dr. Faber's email to his church listserv was discussed on that call. *Id*. Denied to the extent the statement implies that the fact that Dr. Faber would be terminated was previously undecided; rather, Nick Branham requested and received a draft letter terminating Dr. Faber on December 23, 2019. *Id.* at ¶¶ 7, 28. Denied to the extent the statement implies that anyone other than Dr. Patterson, the President of MSPG, made the decision to proceed with Dr. Faber's termination immediately rather than wait to find another noctunist to cover his shifts. *See id*. at ¶ 8.

10. The January 7 email "confirmed MSPG's determination [to fire Dr. Faber] and caused them to provide Dr. Faber with notice of termination on January 11, 2020." ECF No. 22-2, Pageid# 458, Answer to Interrogatory No. 1.

**Response:** Admitted that Dr. Faber's unprofessional, racially charged language about a colleague and derogative descriptions of JMH, Ballad Health, and MSPG contained in the January 7, 2020 email to his church listserv – and Abingdon community members – confirmed MSPG's prior determination to fire Dr. Faber and caused MSPG to provide Dr. Faber with notice of termination on January 11, 2020. Doc. 22 at ¶¶ 35–39; 41-42.

11. The decision to fire Dr. Faber was made by Dr. Patterson for MSPG in consultation with MSPG's Dr. Dominy and Dr. Branham. ECF Doc. No. 22-6, Pageid# 557.

**Response:** Admitted, except to note that neither Stephanie Dominy nor Nick Branham are doctors.

12. The notice of termination, dated January 12, 2020, was written on "Ballad Health" stationery, that it referenced the "balladhealth.org" website, and was signed by Dr. Patterson as the president of "Ballad Health Medical Associates." Exhibit 1 (Ballad_MSPG000078).

**Response:** Denied that this statement is material for purposes of summary judgment. Admitted that the notice of termination delivered to Dr. Faber on January 11, 2020 is dated January 12, 2020 and at the top says "Ballad Health" and "balladhealth.org." Doc. 22-1 at 68. Admitted that the notice of termination was signed by Dr. Patterson. *See id.* Denied that Dr. Patterson signed the notice of termination "as the president of 'Ballad Health Medical Associates'"; Dr. Patterson is, and was at that time, the President of MSPG, and signed the notice of termination in his capacity as such. Doc. 22-9 at ¶¶ 3, 8.

13. The notice references the "termination without cause" provision of the Agreement, section 5.3, which required ninety days advance notice. ECF No. 22-2, Pageid# 443, § 5.3.

**Response:** Denied that this statement is material for purposes of summary judgment. Admitted that the termination notice notes that Dr. Faber is being terminated "pursuant to Section 5.3, <u>Termination Without Cause</u> of [the] Hospitalist

6

Employment Agreement" with MSPG. Doc. 22-1 at 68 (emphasis in original). Denied that that provision "required ninety days advance notice" as misleading; in fact, the provision requires 90 days advance notice prior to termination *only if* MSPG does not elect to pay liquidated damages, which it did here. *Id.*; Doc. 22-2 at 17. Defendants further state that the Hospitalist Employment Agreement speaks for itself and should be taken in its entirety.

14. In the notice, Dr. Patterson indicated that "this letter serves as notice of termination of the Agreement effective as of 7:00 a.m. on January 12, 2020," and that MSPG was electing to pay Dr. Faber $20,000 as "liquidated damages" instead of allowing Dr. Faber to work for the ninety more days, citing section 5.4 of the Agreement.

**Response:**   Denied that this statement is material for purposes of summary judgment. Admitted that the following quoted language appears in the notice of termination: "this letter serves as notice of termination of the Agreement effective as of 7:00 a.m. on January 12, 2020." Admitted that the notice of termination explains that MSPG was "electing to pay [Dr. Faber] liquated damages" of $20,000. Denied as to the characterization that this liquidated damages payment was to avoid "allowing Dr. Faber to work 90 more days"; rather, the notice states that the amount is being paid "in lieu of requiring you to continue to provide services during the Notice Period."  Doc. 22-1 at 68.

15. The payment came out of the budget for JMH. ECF Doc. No. 22-6, Pageid# 557.

7

**Response:** Denied that this statement is material for purposes of summary judgment. Admitted that the liquidated damages payment was paid out of JMH's budget.

16. The notice was hand delivered to Dr. Faber on January 11 and he was told to pack up and leave the hospital immediately on that same day. Exhibit 4 (Faber declaration).

**Response:** Denied that this statement is material for purposes of summary judgment. Admitted that the notice was hand delivered on January 11, 2020. Denied as to the characterization that he was "told to pack up and leave the hospital immediately on that same day." Instead, Dr. Faber was told, "at this point, what we will do is just collect badges, keys, anything that you may have for the chronology [you have put together regarding complaint]." Dr. Faber was asked if he had personal belongings in the hospital. MSPG employees then spent over an hour with Dr. Faber helping him clean out his locker and collect many personal belonging he was storing at the hospital, including contents of a locker (in which Dr. Faber had stored, and subsequently removed from the hospital, protected patient health information), a weight bench, and dumbbells.

17. Dr. Faber filed suit, seeking reinstatement and compensatory damages.

**Response:** Admitted that the lawsuit seeks reinstatement and compensatory damages, among other relief.

8

18. In Count 1, Dr. Faber claimed unlawful retaliation by MSPG and Ballad in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h)(1), which provides: "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."

**Response:** Admitted that under Count 1, Dr. Faber claims unlawful retaliation by MSPG and Ballad in violation of the False Claims Act. The remainder of the statement does not require response, because the cited statute speaks for itself.

19. Dr. Faber alleged in his Complaint that he was wrongfully terminated in violation of section 3730(h)(1) as an employee of MSPG and as a contractor for Ballad. ECF Doc. No. 1, ¶¶ 37, 38.

**Response:** Admitted that Dr. Faber alleges that he was wrongfully terminated in violation of section 3730(h)(1). Admitted that Dr. Faber alleges Count 1 against both MSPG and Ballad. Denied that Dr. Faber's Complaint sufficiently alleges that he was a contractor of Ballad. Instead, it makes only one passing reference to "contractor." *See generally* Doc. No. 1.

20. In Count 2, Dr. Faber has claimed unlawful retaliation by Ballad in violation of Va. Code § 32.1-125.4, which provides: "No hospital may retaliate or discriminate in any manner against any person who (i) in good faith complains or provides information to, or otherwise cooperates with, the Department or any other agency of government or any person or entity operating under contract with an agency of government having responsibility for protecting the rights of patients of hospitals, or (ii) attempts to assert any right protected by state or federal law."

9

**Response:** Admitted that in Count 2, Dr. Faber alleges wrongful discharge in violation of Va. Code § 32.1-125.4. The remainder of the statement does not require response, because the cited statute speaks for itself.

21. Dr. Faber alleged in his Complaint that Ballad retaliated against him, not for cooperating with an investigation, but for attempting to assert his rights that were protected by state or federal law. ECF Doc. No. 1, ¶ 47.

**Response:** Admitted that in Count 2 of the Complaint, Dr. Faber alleges that "Ballad unlawfully retaliated against Dr. Faber for attempting to assert his right under state or federal law to complain about Medicare fraud." Doc. No. 1 at ¶ 47.